[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11777
Non-Argument Calendar
_____

Agency No. A095-075-256

BLANCA L. RAMOS,

                                                                              Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                              Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 13, 2020)

Before BRANCH, TJOFLAT, and, FAY, Circuit Judges.

PER CURIAM:

Blanca Ramos, a native and citizen of Honduras, petitions us to review an order from the Board of Immigration Appeals ("BIA") denying her motion to reopen and terminate her removal proceedings. The Department of Homeland Security ("DHS") issued Ramos's notice to appear ("NTA") in 2009, alleging that she was subject to removal under Immigration and Naturalization Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Ramos's NTA did not include the time and date of her removal proceedings. Ramos now argues that the immigration judge ("IJ") lacked jurisdiction over her removal proceedings based on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

We review our subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). We lack jurisdiction to consider a claim raised in a petition for review "unless the petitioner has exhausted [her] administrative remedies with respect thereto." *Id.*; *see also* INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . .").

The INA provides that an IJ shall conduct proceedings to determine whether an alien is removable from the United States. INA § 240(a)(1), 8 U.S.C. § 1229a(a)(1). The statute does not explicitly state the conditions upon which jurisdiction vests with the IJ, but the Justice Department's regulations provide that

"[j]urisdiction vests . . . when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). For proceedings begun after April 1, 1997, a "charging document" includes an NTA. *Id.* § 1003.13. The regulations provide that an NTA must contain certain information, including the nature of the proceedings and the charges against the alien. The time and date of the hearing, however, are not required. *Id.* § 1003.15. Instead, the regulations state that the NTA shall provide the location, time, and date of the initial removal hearing "where practicable," and that, if the NTA omits that information, the IJ must provide notice of that information to the parties. *Id.* § 1003.18(b).

In *Pereira*, the Supreme Court considered a question "at the intersection of" § 1229(a), regarding the contents of an NTA, and the "stop-time" rule for cancellation of removal in 8 U.S.C. § 1229b(d)(1). *Pereira*, 138 S. Ct. at 2109–10. To be eligible for cancellation of removal, an alien must be continuously physically present in the United States for a certain length of time, and the stop-time rule states that the period of continuous physical presence stops, in certain circumstances, "when the alien is served a notice to appear under section 1229(a)." INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). The Supreme Court in *Pereira* concluded that a putative NTA that does not specify the time or place of the removal proceedings does not trigger the stop-time rule and thus does not end the alien's continuous physical presence in the United States for purposes of

3

cancellation of removal eligibility.  *Pereira*, 138 S. Ct. at 2110.  The Supreme Court reasoned that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule."  *Id.* at 2113–14 (quoting INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1)).

Although the Supreme Court in *Pereira* stated that it was deciding only a "narrow question" about an eligibility requirement for cancellation of removal, *id.* at 2110, it also acknowledged that the NTA flaw present in the case—the failure to specify the time or place of the removal hearing—was present in nearly every NTA that had been issued in recent years, *id.* at 2111.  Consequently, *Pereira* gave rise to a raft of claims by aliens asserting that their removal proceedings were void because they were purportedly commenced by a "putative notice to appear" that was "not a notice to appear under section 1229(a)."  *Id.* at 2113–14 (quotation marks omitted).

In *Perez-Sanchez v. U.S. Att'y Gen.*, we addressed a petitioner's *Pereira* claim that the IJ "never had jurisdiction over his removal case" because the NTA "did not include either the time or date of his removal hearing."  935 F.3d 1148, 1150 (11th Cir. 2019).  As an initial matter, we concluded that we had jurisdiction to review Perez-Sanchez's *Pereira* claim, even though he did not raise it first before the BIA.  *Id.* at 1153.  We explained that we "always have jurisdiction to

determine our own jurisdiction," and because our jurisdiction to review removal proceedings extends only to final orders of removal, we necessarily had to determine whether there was a valid final order of removal granting us jurisdiction. *Id.* Thus, Perez-Sanchez's failure to exhaust the claim before the agency did not deprive us of jurisdiction. *Id.*

Turning to the merits, we first determined that the NTA was "unquestionably deficient" under § 1229(a) for failing to specify the time and date. *Id.* We rejected the government's argument that we should defer to the BIA's interpretation in *Matter of Bermudez-Cota* that an NTA that omits the time and date of the hearing is not deficient under § 1229(a) so long as a notice of hearing containing such information is sent later. *Id.* at 1153–54. We reasoned that *Pereira* foreclosed any argument that a statutory defect in an NTA could be later cured by a subsequent notice of hearing including the time and date. *Id*. at 1154. We stated that "a notice of hearing sent later might be relevant to a harmlessness inquiry, but it does not render the original NTA non-deficient." *Id.*

Nonetheless, we concluded in *Perez-Sanchez* that the defective NTA did not deprive the agency of jurisdiction over the removal proceedings because the statutory "time-and-place requirement" did not "create a jurisdictional rule," but was instead a "claim-processing rule." *Id.* at 1154–55. Similarly, we concluded that 8 C.F.R. § 1003.14, "despite its language, sets forth not a jurisdictional rule

5

but a claim-processing one," reasoning that "an agency cannot fashion a procedural rule to limit jurisdiction bestowed upon it by Congress." *Id.* at 1155. Having determined that the agency properly exercised jurisdiction over Perez-Sanchez's removal proceedings, we denied his petition for review as to his *Pereira* claim. *Id.* at 1157. Finally, to the extent Perez-Sanchez claimed he was entitled to a remand because the NTA otherwise violated the agency's claim-processing rules, we dismissed the petition for lack of jurisdiction because the claim was unexhausted. *Id.*

Here, Ramos's claim that the IJ lacked jurisdiction over her removal proceedings is foreclosed by our decision in *Perez-Sanchez*. While her NTA was defective for failing to specify the time and date of her removal hearing, neither § 1229(a) nor § 1003.14 are jurisdictional rules, and the IJ therefore properly exercised jurisdiction over her proceedings. Ramos has not raised a claim-processing claim before the BIA or this Court. Accordingly, we deny her petition to reopen and terminate her removal proceedings.

**PETITION DENIED.**

6